1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11    CARLOS PERDOMO,                          Case No. 17-06962 BLF (PR)

              Plaintiff,                       **ORDER GRANTING IN PART AND**
12                                             **DENYING MOTION FOR**
                                               **SUMMARY JUDGMENT;**
13        v.                                   **REFERRING CASE TO**
                                               **SETTLEMENT PROCEEDINGS;**
14    WARDEN MUNTEZ, et al.,                   **STAYING CASE; INSTRUCTIONS**
                                               **TO CLERK**
15            Defendants.

16                                             (Docket No. 42)

17

18        Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights action pursuant to 42

19    U.S.C. § 1983 against prison officials at Salinas Valley State Prison ("SVSP").  Dkt. No. 1.

20    The amended complaint is the operative complaint in this action.  Dkt. No. 23-1.  The

21    Court found the amended complaint stated a cognizable claim under the Eighth

22    Amendment against Warden Muniz,[1] Chief Deputy Warden R. Binkele, and Correctional

23    Administrator E. Borla, and ordered Defendants to file a motion for summary judgment or

24    other dispositive motion.[2]  Dkt. No. 26.

25

26    [1] Defendant Warden Muniz's name was miss-spelled as "Muntez" in the amended
      complaint.  Dkt. No. 23-1 at 2.

27    [2] In the same order, the Court dismissed from this action Defendant Scott Kernan for
      failure to state a claim, and Defendants "Plumber(s) Doe 1-5" with leave to amend if
28    Plaintiff was able to obtain their identities through discovery.  Dkt. No. 26 at 3.

United States District Court
Northern District of California

1    Defendants filed a motion for summary judgment on the grounds that they are not

2    liable under a theory of supervisor liability, they were not deliberately indifferent to a

3    substantial risk of serious harm to Plaintiff, they are entitled to qualified immunity, and the

4    Eleventh Amendment bars Plaintiff's official-capacity claims.  Dkt. No. 42.[3]  Plaintiff filed

5    opposition.  Dkt. No. 47.  Defendants filed a reply.  Dkt. No. 50.

6    For the reasons stated below, Defendants' motion for summary judgment is

7    **GRANTED IN PART and DENIED IN PART**.

8

9    **DISCUSSION**

10   **I.    Statement of Facts[4]**

11   **A.    Parties**

12   Plaintiff is an inmate at SVSP, where the underlying events took place.  Dkt. No.

13   23-1 at 1.  Plaintiff was confined at SVSP in facility B, building 2, cell 136, between April

14   8, 2017 and May 24, 2017, when the events that gave rise to this action took place.  *Id.*

15   Plaintiff names three prison administrators at SVSP as Defendants: Muniz, Binkele, and

16   Borla.

17   Defendant Muniz was serving as the acting warden of SVSP from May 2014 to

18   February 2018, which includes the time relevant to this lawsuit.  Muniz Decl. ¶ 3.  As

19   warden, Defendant Muniz performed the administrative functions of running a prison.  *Id.*

20   ¶ 4.  His position was six levels up the chain of command from a correctional officer, who

21   serves as the first line of contact for an inmate.[5]  *Id.* ¶¶ 5-7.  He was not a direct supervisor

22

23   [3] In support of their motion, Defendants provide the declarations of Defendant W. Muniz
     with exhibits, Dkt. No. 42-1, Defendant E. Borla, Dkt. No. 42-2, Defendant R. Binkele
24   with exhibits, Dkt. No. 42-3, and counsel Iram Hasan, Dkt. No. 42-4, along with a
     transcript of Plaintiff's deposition taken on October 31, 2019, *id.*, Ex. A.
25

26   [4] The following facts are not disputed unless otherwise stated.

27   [5] The custodial chain of command at SVSP, from low to high, is correctional officer,
     sergeant, lieutenant, captain, correctional administrative (with a working title of associate
28

United States District Court
Northern District of California

for a correctional officer, or even a correctional sergeant. *Id.* As warden, Defendant Muniz's day-to-day responsibilities did not include reviewing grievances or work requests. *Id.* ¶ 10. The warden is tasked with implementing and enforcing prison operating procedures but is not necessarily involved with performing the tasks described in the procedures. *Id.*

Defendant Binkele was a correctional administrator/associate warden, assigned to facilities C and D at SVSP between April 8, 2017 and May 1, 2017. Binkele Decl. ¶ 2. Defendant Binkele served as SVSP's chief deputy warden from May 1, 2017 onward. *Id.* In this role, Defendant Binkele issued second-level responses to inmate grievances that are appealed after a first-level response is issued. *Id.* ¶ 10. Defendant Binkele's position was five levels up the chain of command from a correctional officer. *Id.* ¶¶ 4-5. He was not a direct supervisor for a correctional officer, or even a correctional sergeant. *Id.*

Defendant Borla was acting chief deputy warden between April 8, 2017 and May 1, 2017, and then a correctional administrator/associate warden assigned to facilities C and D from May 1, 2017 onwards. Borla Decl. ¶ 9. As associate warden, Defendant Borla's role included second-level management of facilities C and D. *Id.* ¶ 3. Among other responsibilities, Defendant Borla reviewed all first-level inmate grievances in facilities C and D. *Id.* Defendant Borla did not review any grievances from Plaintiff, who lived in facility B, in April and May 2017. *Id.* ¶ 10. Defendant Borla's position at the time was four levels up the chain of command from a correctional officer. *Id.* ¶ 4. He was not a direct supervisor for a correctional officer, or even a correctional sergeant. *Id.*

**B.   Cell Conditions**

During the time at issue, Plaintiff was housed in cell 136 in facility B, building 2, at SVSP. Dkt. No. 23-1 at 6. According to Plaintiff, for 46 days, between April 8, 2017 and May 27, 2017, his cell had a clogged sink, raw sewage spewing out of the sink drain, and

_____

warden), chief deputy warden, and warden. Muniz Decl. ¶ 5.

1   raw sewage from his building's floor drain constantly leaking into his cell.  *Id.*

2           According to Plaintiff, he notified several correctional officers in his housing unit

3   about his clogged sink and flooded cell starting on April 8, 2017.  *Id.* at 8; Pl.'s Dep. at

4   52:10-19, 68:20-69:2, 73:24-74:5, 77:4-78:10.[6]  Plaintiff wrote down that he notified

5   officers to put in a work order on that day.  *Id.*, Ex. 3; Dkt. No. 42 at 162.  The "note" he

6   references is a slip of lined paper with the following handwritten words: "'#136 sink

7   clogged log,' [¶] cell #136, [¶] Work order (sink clogged & flood), [¶] 4/Sat.8/20[]17, [¶]

8   602/ 5/24/2017."  *Id.*  According to Plaintiff, the officers assured him that they "either

9   submitted a work order request and or emailed their supervisors."  Dkt. No. 23-1 at 8.  But

10  whenever Plaintiff inquired of the work order to the plumbers that would come to their

11  facilities, the plumbers would say there was no work order.  Pl.'s Dep. at 78:12-79:2.  The

12  plumbing issue continued to go unfixed.  *Id.*  Meanwhile, the officers would provide the

13  inmates with material to clean up the flooded water.  *Id.* at 74:8-75:6, 79:9-12.  Eventually

14  on May 24, 2017, Plaintiff filed a grievance regarding the clogged sink and flooding issue.

15  *Id.* at 9.  That same day, Plaintiff was moved to a different, fully functional cell.  *Id.*

16      **C.**     **Prison Procedures for Requesting Cell Maintenance**

17          When inmates have a cell maintenance service request, like a plumbing issue, they

18  can address the situation in two ways.  Binkele Decl. ¶ 8.

19          First, the inmate can notify a correctional officer about the maintenance request.  *Id.*

20  ¶ 8.a.  Inmates are in constant contact with, and have constant access to, correctional

21  officers assigned to their building.  *Id.*  SVSP's Operating Procedure 48 ("OP 48")

22  describes the procedure for requesting and processing a cell maintenance request, or "work

23  request."  Muniz Decl. ¶ 9, Ex. A.  Section 48.7 of OP 48 authorizes any SVSP employee

24  to submit a written work request with approval of his or her supervisor.  *Id.*; Dkt. No. 42-1

25  _____

26  [6] During deposition, Plaintiff named Correctional Officers Wheeler, Casanada, Martinez, and Luge.  Pl.'s Dep. at 73:24-74:5.  Plaintiff declined to sue the officers because he

27  believed they were being understanding about the plumbing issues and that the negative conditions in the facility was affecting them as well.  *Id.* at 79:13-80:5.

28

United States District Court
Northern District of California

at 8-9.  The officer will follow OP 48 and file a work request on a Form 2184, briefly describing the inmate's maintenance issue.  *Id.*  The officer's supervisor approves and signs the work request.  *Id.*  The building's work-order coordinator logs the work request and forwards it to Plant Operations.  *Id.*  A Plant Operations supervisor reviews the work request, generates a work order, and assigns staff to fix the issue.  *Id.*

OP 48 classifies a plumbing problem that creates a sanitary issue as a priority one, which warrants an emergency work request.  Muniz Decl. ¶ 11, Ex. A at 5-6; Dkt. No. 42-1 at 12-13.  An on-call Plant Operations Supervisor reviews emergency requests received during non-business hours and determines if maintenance staff needs to make repairs immediately, or whether the request can be delayed until normal business hours.  Muniz Decl. ¶ 11, Ex. A at 3; Dkt. No. 42-1 at 9.  A plumber usually responds to an emergency work request within twenty-four hours.  Muniz Decl. ¶ 11.  The Plant Operations Supervisor is the most senior employee to review a work request.  *Id.*, Ex. A at 3.  Work requests do not go up the chain of command to associate wardens, chief deputy wardens, or wardens; the work order process ends with Plant Operations.  Muniz Decl. ¶ 10; Binkele Decl. ¶ 9.

Second, the inmate can use the institution's grievance process, as outlined in Title 15, sections 3084.1 through 3084.3.  Binkele Decl. ¶ 8.b.  Correctional sergeants typically review grievances concerning maintenance, and either grant or deny the inmate's request.  *Id.*  If the inmate's request requires actions from a certain department, that department would be notified to take action.  *Id.*  Any time an inmate believes there is a serious and imminent threat to his or her health or safety, the inmate can submit an emergency grievance.  *Id.*  Section 3084.9 sets forth the emergency grievance process, *id.*, and includes a "serious and imminent threat to health or safety."  Cal. Code Regs. tit., 15, § 3084.9(a)(1)(B)).  Inmates learn about the grievance process each time they are processed into a state prison.  Binkele Decl. ¶ 8.b.

///

1

2

### D.    Plaintiff's Inmate Grievance Regarding Plumbing Issue

Plaintiff was housed in SVSP's facility B, building two, cell 136 from March 31, 2017 to May 24, 2017.  Binkele Decl. ¶ 12, Ex. B.  On May 24, 2017, Plaintiff submitted a grievance to the prison, complaining of a clogged sink that spewed out sewage and sewage water leaking into his cell, and that these issues started on April 8, 2017.  Binkele Decl. ¶ 11, Ex. A at AG003-AG005.  That same day, officers moved Plaintiff to a different, fully functional cell.  Binkele Decl. ¶ 12, Ex. B.  Plaintiff's old cell, cell number 136, was immediately marked out of order and repaired within a few days.  *Id.*, Ex. A at AG001-2.

A non-party, Sergeant A. Ware, conducted the second-level investigation and prepared the second-level response.  Binkele Decl. ¶¶ 14-15.  Defendant Binkele reviewed Sgt. Ware's report on May 28, 2017.  *Id.* ¶ 17.  Based on that report, Defendant Binkele partially granted the grievance because Plaintiff no longer resided in the cell with the plumbing issue, and a work request was submitted to repair Plaintiff's old cell.  *Id.* ¶ 17, Ex. A at AG002.  Defendant Binkele partially denied Plaintiff's grievance to the extent that Plaintiff sought monetary relief, because second-level reviewers are not authorized to grant monetary relief.  *Id.* ¶ 16. Ex. A at AGO002.

Until he filed the grievance on May 24, 2017, Plaintiff did not file any other paperwork to alert the prison about the plumbing issue in his cell.  Hasan Decl., Ex. A (Pl.'s Dep.) at 83:3-24, 90:24-91:16, 96:25-99:1, 99:2-13, 99:19-100:11, 102:20-103:11.  Plaintiff admits that he waited forty-six days to file the grievance because he does not like "putting stuff on paper," *id.* at 83:21-25, and because he "was lazy," *id.* at 91:7.  Plaintiff was familiar with the grievance process before the plumbing issues underlying his complaint arose, and he had filed at least one grievance in the past.  *Id.* at 89:20-90:23.

### E.    Plaintiff's Claims

In this action, Plaintiff claims Defendants Muniz, Binkele, and Borla were "clothed with the authority to approve and oversee all procedures of (yet not limited to) Operation Procedure 48 work order request, work orders, and project requests" at SVSP.  Dkt. No.

6

United States District Court
Northern District of California

23-1 at 2-3.  Plaintiff claims that Defendants had actual knowledge of the risk of serious harm to him due to the unsanitary conditions but failed to reasonably respond to his work order requests.  *Id.* at 6-9.  Plaintiff also claims Defendants failed to reasonably respond to his complaints within twenty-four to forty-eight hours.  *Id.* at 9.  Plaintiff claims that the smell from the sink and flooding water caused him to lose his appetite, miss several meals, have headaches, and be exposed to possible waterborne diseases.  *Id.* at 10.  Plaintiff seeks damages against Defendants Muniz, Binkele, and Borla, and is suing them in their personal and official capacities.  *Id.* at 2-3.  The Court found these allegations, liberally construed, stated a cognizable Eighth Amendment claim against Defendants.  Dkt. No. 26 at 2.

## II.   <u>Summary Judgment</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of

evidence to support the nonmoving party's case." *Id*. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id*. at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id*.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## A.   Supervisor Liability

Defendants first assert that Plaintiff cannot establish that they are liable under a theory of supervisor liability.  Dkt. No. 42 at 13.

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).  Even if a supervisory official is not directly

involved in the allegedly unconstitutional conduct, "[a] supervisor can be liable in this individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted).  The claim that a supervisory official "knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208) (finding that conclusory allegations that supervisor promulgated unconstitutional policies and procedures which authorized unconstitutional conduct of subordinates do not suffice to state a claim of supervisory liability); *Wilk v. Neven*, 956 F.3d 1143, 1146 (9th Cir. 2020) (a reasonable factfinder could find the warden liable as supervisor in a failure-to-protect suit because only the warden or his designee had the authority to add a person to an inmate's enemy list and there was evidence plaintiff submitted a request to place an inmate, who later attacked him, on the list).

Under no circumstances is there respondeat superior liability under § 1983.  Or, in layman's terms, under no circumstances is there liability under § 1983 solely because one is responsible for the actions or omissions of another.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984); *accord Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (local governments cannot be liable under § 1983 under respondeat superior theory).

Defendants assert that Plaintiff seeks to hold top-level supervisors at SVSP responsible for plumbing and maintenance issues in his cell based on their general supervisory authority over the prison.  Dkt. No. 42 at 8.  Specifically, they challenge Plaintiff's claim that Defendants are liable because they are "clothed with the authority to approve and oversee all procedures of (yet not limited to) Operation Procedure 48 work

9

order request, work orders, and project requests" at SVSP. *Id.*; Dkt. No. 23-1 at 2-3. Defendants assert that this basis is inadequate under § 1983, and that Plaintiff is attempting to manufacture a causal connection between Defendants and the plumbing issue in his cell by arguing that they were tasked with overseeing the implementation and enforcement of OP 48. Dkt. No. 42 at 8-9. Defendants assert, however, that although they supervised SVSP operations at a prison-wide/facility-wide level, they were not responsible for regularly checking on inmates' cells or actually carrying out the steps outlined in OP 48. *Id.* at 9; Muniz Decl. ¶¶ 9-10; Binkele Decl. ¶ 9; Borla Decl. ¶ 14.

Defendants also make much of Plaintiff's statements during deposition. Dkt. No. 42 at 12-13. During deposition, Plaintiff stated that he named Defendants Muniz and Binkele as defendants because his cellmate provided him with a copy of SVSP's Operating Procedure 48 ("OP 48). Pl.'s Dep. at 95:8-14. Essentially, Plaintiff's cellmate provided him with Defendant Muniz's and Binkele's names. Pl.'s Dep. at 95:16-96:9. To connect them to his claim, Plaintiff relied on OP 48 wherein it states, "The Warden designates overall responsibility to the Correction Administrator Business Services under the direction of the Chief Deputy Warden." *Id.* at 93:17-94:7; Muniz Decl., Ex. A at 1. Furthermore, Plaintiff also admitted that he named Defendant Borla as a defendant because while residing in facility C in 2016, Plaintiff took a class in which inmates spoke to children who visited the prison and he remembered Defendant Borla's name in connection with the class. *Id.* at 96:10-24. Defendants assert that Plaintiff acknowledged that Defendants' supervisory roles did not include preparing, processing, or reviewing work requests for cell maintenance, and that OP 48 itself is legitimate. Dkt. No 42 at 12. Lastly, Defendants assert that Plaintiff does not contest the lack of supervisor liability in his opposition. Dkt. No. 47; Dkt. No. 50 at 3.

Although Plaintiff does not explicitly address supervisor liability in his opposition, he does dispute that Defendants lacked knowledge of major plumbing issues. In opposition, Plaintiff provides evidence of two prior lawsuits involving allegations of

1   ongoing plumbing problems in the same building within the past two years; both suits

2   resulted in a settlement.  Dkt. No. 47 at 2-3, 11, 14-15.  The Court will take judicial notice

3   of these cases as those proceedings have a direct relation to matters at issue here.[7]

4       Viewing the evidence in the light most favorable to Plaintiff, the Court finds there

5   are genuine issues of material facts with respect to Defendants' actual knowledge of

6   Plaintiff's plumbing issues and therefore their liability as supervisors.  The two lawsuits

7   that Plaintiff relies on to establish Defendants' knowledge of the ongoing plumbing issues

8   in his building are as follows: *Abad v. Foss, et al.*, (hereinafter "*Abad*"), Case No. 19-cv-

9   01682-CRB (RMI), and *Parks v. Johnson, et al.*, (hereinafter "*Parks*"), Case No. 17-cv-

10  06611-RS.  Pl.'s Opp., Attach. 1, Dkt. No 47 at 11; *id.*, Ex. A, Dkt. No. 47 at 14-15.  Both

11  these lawsuits arose from events that took place at SVSP and were adjudicated in this

12  district.  Firstly, the plaintiff in *Parks* sued Defendant Warden Muniz along with a

13  correctional officer, the Plant Operations supervisor, and several John Does, for hazardous

14  conditions in SVSP's Facility B, Building 2, caused by a broken sewage water pipe in June

15  and December 2016.  *Parks*, Dkt. No. 1 at 1.  Facility B, Building 2 is the same building

16  where Plaintiff was housed in the instant action.  *See supra* at 3.  Plaintiff Parks alleged

17  that during the rainy season, "approximately 40% of the prisons cells in Building 2 had

18  leaks and floods that required mopping 3-4 times a day."  *Parks*, Dkt. No. 1 at 5.  Plaintiff

19  Parks also alleged that broken plumbing pipes, toilet dysfunctions, and broken sink

20  faucets, among other hazardous conditions, had been ongoing "year after year" in Building

21  2.  *Id.*  Before dispositive motions were filed, the parties filed a stipulation that they had

22  resolved the case in its entirety and requested voluntary dismissal with prejudice.  *Id.*, Dkt.

23  No. 19.  Although Defendant Muniz was dismissed from the case at the outset, *id.*, Dkt.

---

[7] A district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citations omitted) (granting request to take judicial notice in § 1983 action of five prior cases in which plaintiff was *pro se* litigant, to counter her argument that she deserved special treatment because of her *pro se* status).

United States District Court
Northern District of California

No. 9 at 2-3, it is not likely that the parties, which included his subordinates, would have reached a settlement without his knowledge.[8]  Secondly, the plaintiff in *Abad* was also confined at SVSP and was suing the prison for unsanitary conditions arising from water leakages after every rainfall and toilet problems during January through April, and November of 2018, while he was housed in "(C) yard - building (3) – cell (213)." *Abad*, Dkt. No. 1 at 7, 8-9.  The Court recognizes that knowledge of conditions in 2018 cannot form the basis of knowledge of the circumstances alleged in this case that occurred in 2017.  Thus, the Court draws no inferences from the *Abad* case.  Accordingly, Plaintiff's evidence that the *Park* lawsuit was filed in the past two years involving similar claims of unsanitary and hazardous conditions preexisting the claims in this case establishes that there exists a genuine issue of material fact with respect to Defendants' knowledge of ongoing plumbing issues throughout SVSP, including Plaintiff's building.  Such knowledge would make them liable as supervisors where they failed to act despite that knowledge, rendering them acquiescent to the unconstitutional conduct of their subordinates.  *Keates*, 883 F.3d at 1243.

Based on the foregoing, the Court finds summary judgment is not appropriate because there remain genuine issues of material facts with respect to Defendants' liability as supervisors.  *See Celotex Corp.*, 477 U.S. at 323.  Accordingly, Defendants are not entitled to summary judgment on this basis.

### B.    Eighth Amendment – Deliberate Indifference

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *See Helling v. McKinney*, 509 U.S. 25, 31 (1993).

_____

[8] It is unclear whether Defendant Binkele worked at SVSP during this time.  Binkele Decl. ¶ 2.  Defendant Borla was employed at SVSP since June 2015, and therefore present during the conditions alleged in *Parks*.  Borla Decl. ¶¶ 1, 2.

1    The Amendment imposes duties on prison officials, who must provide all prisoners with

2    the basic necessities of life such as food, clothing, shelter, sanitation, medical care and

3    personal safety.  *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago County Dep't of*

4    *Social Servs.*, 489 U.S. 189, 199-200 (1989); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th

5    Cir. 1982).  A prison official violates the Eighth Amendment when two requirements are

6    met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511

7    U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official

8    possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

9        In determining whether a deprivation of a basic necessity is sufficiently serious to

10   satisfy the objective component of an Eighth Amendment claim, a court must consider the

11   circumstances, nature, and duration of the deprivation.  The more basic the need, the

12   shorter the time it can be withheld.  *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.

13   2000).  Substantial deprivations of shelter, food, drinking water or sanitation for four days,

14   for example, are sufficiently serious to satisfy the objective component of an Eighth

15   Amendment claim.  *See id.* at 732-733; *see, e.g., Hearns v. Terhune*, 413 F.3d 1036, 1041-

16   42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard

17   for a period of nine months, including toilets that did not work, sinks that were rusted and

18   stagnant pools of water infested with insects, and a lack of cold water even though the

19   temperature in the prison yard exceeded 100 degrees, enough to state a claim of

20   unconstitutional prison conditions); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th

21   Cir.) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain

22   within the meaning of the Eighth Amendment."), *amended*, 75 F.3d 448 (9th Cir.), *cert.*

23   *denied*, 516 U.S. 916 (1995).  The requisite state of mind to establish an Eighth

24   Amendment violation depends on the nature of the claim.  In prison-conditions cases, the

25   necessary state of mind is one of "deliberate indifference." *See, e.g., Farmer*, 511 U.S. at

26   834 (inmate safety); *Wilson*, 501 U.S. at 302-03 (general conditions of confinement);

27   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (inmate health).

28

United States District Court
Northern District of California

Neither negligence nor gross negligence will constitute deliberate indifference.  *See Farmer*, 511 U.S. at 835-37 & n.4; *see also Estelle*, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence).  A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety.  *See Farmer*, 511 U.S. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *See id.*  An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.  *See id.* at 842.

Defendants assert that they are entitled to summary judgment on this deliberate indifference claim because there is no triable dispute that: (1) they had no actual knowledge of Plaintiff's plumbing issue until after it was fixed; and (2) once Plaintiff submitted his grievance, officials reasonably responded to his complaint.  Dkt. No. 42 at 15.  Assuming that Plaintiff can show that the condition of his cell was objectively sufficiently serious, Defendants assert that his claim fails because he cannot show that Defendants knew about the condition of his cell or that they disregarded it.  *Id.* at 16.  Defendants Muniz and Borla attest that they had no knowledge of Plaintiff's cell conditions at any time during the relevant period.  *Id.*; Muniz Decl. ¶¶ 8, 15; Borla Decl. ¶ 10.  Defendants also point to Plaintiff's statements during deposition, wherein he admits that he did not notify either of these Defendants about his maintenance issue.  Dkt. No. 42 at 16; Pl.'s Dep. at 96:25-99:1, 99:19-100:11.  Furthermore, although Plaintiff alleges that he started to notify officers in his housing-unit about the plumbing issues in his cell between April 8, 2017 and May 24, 2017, asking them to file emergency work requests, Defendants assert that as executive-level administrators, they did not perform the functions

14

of correctional officers, who were in close proximity to inmates on a daily basis and could monitor their cells throughout the day. *Id.* Defendants asserts that they did not visit inmates' cells on a daily basis, and they did not know when individual cells required maintenance. Dkt. No. 42 at 16.; Muniz Decl. ¶¶ 6-7; Binkele Decl. ¶¶ 5-7; Borla Decl. ¶¶ 3, 5-6. Defendants assert that although they had the authority to implement and enforce OP 48, it is undisputed that they did not actually prepare, process, or review the work requests. Dkt. No. 42 at 16-17; Muniz Decl. ¶¶ 9-10; Binkele Decl. ¶ 9; Borla Decl. ¶ 14. Accordingly, Defendants assert that Plaintiff fails to satisfy the subjective-intent requirement of *Farmer* because he cannot show that Defendants knew about the condition of his cell or the risk it created. Dkt. No. 42 at 17.

As discussed above, Plaintiff asserts in opposition that there have been major issues with plumbing for approximately two years and that problems continue to persist. *See supra* at 10-12; Dkt. No. 47 at 2. In reply, Defendants assert that Plaintiff's argument fails because he fails to specify the timeframe during which these prison-wide construction and plumbing issues occurred, or that these issues overlapped with, caused, or were in any way related to the plumbing issues in his cell in April and May 2017. Dkt. No. 50 at 4. Defendants assert that without more, this fact is irrelevant to Plaintiff's original claim regarding plumbing issues in his cell. *Id.* Defendants also assert that even assuming there were prison-wide construction and plumbing issues at some point in time, Plaintiff fails to explain how a warden and chief deputy warden who oversee operations in the entire prison at an executive level, and an associate warden who supervises a different part of the prison, would know about the plumbing issues in Plaintiff's individual cell. *Id.* Defendants assert that Plaintiff fails to present evidence showing that Defendants either knew of or participated in the plumbing issue Plaintiff experienced. *Id.* Therefore, Defendants assert, even if it were true that plumbing issues existed in other parts of the prison at some unspecified period of time, his admissions make clear that Defendants neither knew about nor caused the plumbing issues in his particular cell. *Id.* at 5.

15

1   As discussed above, the Court takes judicial notice of the *Parks* lawsuit that ended

2   with settlement agreement, which involved similar allegations regarding the unsanitary and

3   hazardous conditions of confinement at SVSP a year prior to the incident here at issue.

4   *See supra* at 10-12.  For the same reasons discussed above, the Court finds Plaintiff has

5   shown the existence of a genuine dispute of material fact regarding Defendants'

6   knowledge of these chronic plumbing issues.  Assuming that the conditions in Plaintiff's

7   cell were objectively sufficiently serious, there remains a dispute of material fact over

8   whether Defendants knew of and disregarded an excessive risk to Plaintiff's health or

9   safety.  *See Farmer*, 511 U.S. at 837.  Despite Plaintiff's admission that he never

10  personally notified any of the Defendants or his lack of knowledge that any correctional

11  officer notified any of the Defendants about his plumbing issues,[9] the inferences raised

12  from the settled lawsuit discussed above must be construed in the light most favorable to

13  Plaintiff, *i.e.*, that there were ongoing plumbing issues throughout SVSP, including Facility

14  C and Facility B (Building 2), that persisted for over 2 years and that Defendants were

15  aware of it in their roles as supervisors.  Based on this evidence, a jury could find that

16  Defendants acted with criminal recklessness, *i.e.*, Defendants knew of and disregarded an

17  excessive risk to inmate health or safety.  *See Farmer*, 511 U.S. at 837.  As such, it matters

18  not that Plaintiff chose to make verbal requests to correctional officers and waited 46 days

19  to file a grievance.  If Defendants were already aware of an excessive risk to inmate health

20  and safety caused by the plumbing issues in the building where Plaintiff was housed, then

21  it is immaterial when and how Plaintiff sought to bring the specific issue of his cell to their

22  attention.  *Id.*

23  Based on the foregoing, the Court finds summary judgment is not appropriate

24  because there remain genuine issues of material facts with respect to Plaintiff's Eighth

25  Amendment claim.  *See Celotex Corp.*, 477 U.S. at 323.  Accordingly, Defendants are not

United States District Court
Northern District of California

_____

[9] Pl.'s Dep. at 96:25-99:1, 99:2-13, 100:5-11, 101:16-102:2, 102:20-103:11.

entitled to summary judgment on this claim.

C.    **Qualified Immunity**

Defendants assert that even if there was an Eighth Amendment violation, Defendants are entitled to qualified immunity because the alleged violation was not clearly established.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236. The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).

When qualified immunity is asserted in a motion for summary judgment, a district court must carefully examine the specific factual allegations against each individual defendant. *Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000). Supervisor defendants are entitled to qualified immunity where the allegations against them are simply

17

"bald" or "conclusory" because such allegations do not "plausibly" establish the supervisors' personal involvement in their subordinates' constitutional wrong. *Ashcroft v. Iqbal*, 556 U.S. 662, 675-84 (2009) (noting no vicarious liability under Section 1983 or *Bivens* actions). So it is insufficient for a plaintiff only to allege that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation, without alleging "a *specific* policy" or "a *specific* event" instigated by them that led to the constitutional violations. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (emphasis in original); *cf. Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (finding no qualified immunity where plaintiff pled specific facts that plausibly suggest supervisors' "knowledge of" and "acquiescence in" unconstitutional conduct of subordinates). If the defendant is a supervisor who had no direct involvement in or direct management responsibility for the alleged constitutional deprivation, the qualified immunity defense must be examined within the context of policy-level activities. *Jeffers v. Gomez*, 267 F.3d 895, 916 (9th Cir. 2001) (suggesting that director of state prison system could be held liable for inadequate training of prison guards on how to respond to a prison riot only if prison director recklessly, maliciously or deliberately established policies that caused Eighth Amendment violations).

Assuming Plaintiff establishes an Eighth Amendment violation to satisfy the first prong, Defendants assert they are entitled to qualified immunity under the second part of the *Saucier* test because the constitutional right at issue was not clearly established in the specific context of this case. Dkt. No. 42 at 19. Defendants assert that while the general principal that denying sanitary living conditions to an inmate may constitute deliberate indifference is well established, that principal has not been applied to hold high-level administrative prison officials liable if the officials have no responsibility to monitor individual inmates' cells and arrange for maintenance repairs. *Id.* Defendants rely on *Jeffers*, 267 F.3d at 916, in which the Ninth Circuit rejected a theory of liability against a high-level prison official where the plaintiff failed to present any evidence that the official

18

"conducted himself in a reckless or malicious manner or that his actions were, in fact, deliberate." *Id.*; Dkt. No. 42 at 19-20. The appellate court held that because the defendant prison official "had no direct involvement or direct management responsibility for quelling the riot," except that he implemented the relevant policy, "his qualified-immunity defense should have been examined within the context of policy-level activities." *Id.* Similar to *Jeffers*, Defendants assert that Defendant Muniz implemented SVSP's OP 48 setting for the procedure for handling work requests, and Defendant Binkele had supervisory authority over the official charged with overseeing the policy. *Id.* at 20; Muniz Decl., Ex. A. Neither Defendant Muniz nor Binkele had direct supervisory authority over carrying out work requests, and Defendant Borla, as associate warden of complex II, was not in the chain of command set forth in OP 48. *Id.*; Muniz Decl. ¶¶ 9-10; Binkele Decl. ¶ 9; Borla Decl. ¶ 14. OP 48 sets forth a detailed procedure establishing the chain of command of work requests from each department in the prison to the maintenance facility, and the correctional plant manager was responsible for enforcing OP 48. Muniz Decl., Ex. A. Defendants assert that a reasonable warden, chief deputy warden, or associate warden in Defendants' positions could believe that it was constitutional to rely on the prison's plant operations and subordinate staff to handle individual requests for cell maintenance. Dkt. No. 42 at 20. Therefore, Defendants assert, because there is no clearly established law establishing a right by which an inmate can expect a warden, a chief deputy warden, and an associated warden to monitor an individual cell at a prison and arrange maintenance repairs when a plumbing issue arises, they are entitled to qualified immunity. *Id.*

In opposition, Plaintiff asserts Defendants are not entitled to qualified immunity and cites to several cases involving prison conditions that violate the Eighth Amendment. Dkt. No. 47 at 7-8. He asserts that Defendants are not entitled to immunity because "too many lawsuits and complaints (602's) were filed regarding this issue." *Id.* at 8. In reply, Defendants assert Plaintiff has failed to identify a case where an officer acting under similar circumstances was held to have violated the right at issue and that none of the

seven cases he cites to are analogous to his case.  Dkt. No. 50 at 7.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants are not entitled to qualified immunity because there remain genuine issues of material fact regarding their knowledge of the ongoing plumbing issues in at least two facilities within SVSP.  Defendants rely on *Jeffers* to support their argument that qualified immunity bars Plaintiff's claim against them as supervisors who were only responsible for implementing the relevant policy, not carrying it out.  *See supra* at 19.  However, Plaintiff's case is distinguishable from *Jeffers*, which lacked evidence that the supervisor conducted himself in a reckless or malicious manner or that his actions were deliberate. *Id.* at 19.  Plaintiff has submitted evidence showing that there were at least two other lawsuits filed against SVSP officials concerning unsanitary conditions due to plumbing issues that resulted in settlement.  *See supra* at 10-12.  And the *Parks* case involved conditions predating this case, as the time period involved in that lawsuit includes June 2016 and December 2016.  *Id.*  Plaintiff's underlying events took place in April and May 2017.  *Id.* at 3.  This evidence indicates that plumbing issues persisted in Facility B at SVSP over a 2-year period.  Accordingly, this is not a situation where supervisors were uninvolved in dealing with incidental maintenance problems in one inmate's cell.  Rather, there is evidence that there were ongoing and recurrent problems affecting an entire facility within the prison of which higher-level supervisors would have been aware.  If these supervisor Defendants knowingly did nothing in the face of such persistent problems creating hazardous and unsanitary conditions for inmates, then a jury could find that their conduct rises to the level of criminal recklessness.  *See Farmer*, 511 U.S. at 837.  Plaintiff has submitted sufficient caselaw showing that the law is clearly established in this regard. *See Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985); *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980); *Gates v Cook*, 376 F.3d 323, 340-41 (5th Cir. 2004). Accordingly, he has met his burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct.  *Maraziti*, 953 F.2d at 523.

Accordingly, Defendants are not entitled to qualified immunity because the allegations against them are not merely "bald" or "conclusory." *See Iqbal*, 556 U.S. at 675-84. Rather, there is evidence that plausibly suggests that Defendants had knowledge of and acquiescence in unconstitutional conduct of subordinates such that they are not entitled to qualified immunity. *See Starr*, 652 F.3d at 1207. Accordingly, Defendants' motion based on qualified immunity is DENIED.

### D.    Eleventh Amendment Immunity

Lastly, Defendants assert that Plaintiff's claim for damages against them in an official capacity is barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The United States Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The United States Supreme Court concluded that such a suit is therefore no different from a suit against the state itself. *Id.*

In opposition, Plaintiff appears to concede that Defendants are entitled to Eleventh Amendment immunity as he merely argues that they may still be liable for declaratory and/or injunctive relief, and in their individual capacities. Dkt. No. 47 at 9. Accordingly, the Court finds that the Eleventh Amendment bars Plaintiff's claims for monetary relief to the extent that they are based on acts by Defendants in their official capacity. *See id.*; *Nesbit v. Dep't of Pub. Safety*, Nos 06-16428, 06-16623, 283 Fed. Appx. 531, 533 (9th Cir. 2008) (unpublished memorandum disposition) (concluding that the district court properly dismissed prisoners' claims against defendants acting in their official capacities).

### III.    Referring Case to Settlement Proceedings

The Court has established a Pro Se Prisoner Settlement Program under which

certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement.  In light of the existence of triable issues of fact as to whether Defendants Muniz, Binkele, and Borla violated Plaintiff's rights under the Eighth Amendment, the Court finds the instant matter suitable for settlement proceedings.  Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Settlement Program.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1.      Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** with respect to the claim for money damages against Defendants in their official capacities as barred by the Eleventh Amendment.  Accordingly, the official capacity claims against Defendants Muniz, R. Binkele, and E. Borla are **DISMISSED** with prejudice.

The motion is **DENIED** on the merits of Plaintiff's Eighth Amendment claims against Defendants Muniz, R. Binkele, and E. Borla, as well as based on supervisor liability and qualified immunity.

2.      The instant case is **REFERRED** to Judge Robert M. Illman pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims in this action, as described above.  The proceedings shall take place **within ninety (90) days** of the filing date of this order.  Judge Illman shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

3.      Other than the settlement proceedings ordered herein, and any matters Magistrate Judge Illman deems necessary to conduct such proceedings, this action is hereby **STAYED** until further order by the court following the resolution of the settlement

United States District Court
Northern District of California

proceedings.

4.       The Clerk shall send a copy of this order to Magistrate Judge Illman in

Eureka, California.

**IT IS SO ORDERED.**

**Dated:  _August 24, 2020_____**

BETH LABSON FREEMAN
United States District Judge

Order Denying in Part and Granting in Part MSJ; Refer to Sett.
PRO-SE\BLF\CR.17\06962Perdomo_dney.msj&refer.Illman

23